IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re Subpoena to MARY FANNING | Case No. 2:23-mc-00051-BHL |

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., and SGO CORP., LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL J. LINDELL and MY PILLOW, INC.,<br><br>Defendants. | Case No. 22-cv-00098-WMW-JFD |

**SMARTMATIC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITION TESTIMONY OF MARY FANNING AND MOTION FOR SANCTIONS, AND OPPOSITION TO MS. FANNING'S AND HER COUNSEL'S MOTIONS FOR PROTECTIVE ORDER AND REQUEST FOR ATTORNEY FEES AND SANCTIONS**

1

Smartmatic submits this Reply in Support of its Motion to Compel Deposition Testimony of Mary Fanning, Motion for Sanctions, and Opposition to Ms. Fanning's Motion for Protective Order (ECF No. 2) ("Motion to Compel"), and in response to Ms. Fanning's and her Counsel's Brief in Opposition and Request for Attorney Fees and Sanctions (ECF No. 12) ("Opposition").

## **INTRODUCTION**

Smartmatic has demonstrated that Ms. Fanning, one of Defendant Michael J. Lindell's principal sources of information for his disinformation campaign, should be compelled to appear for a deposition. Ms. Fanning has repeatedly attempted to evade her subpoena obligations in a calculated attempt to run out the clock on fact discovery. Initially, she forced Smartmatic to engage in months of meet-and-confers just to obtain responsive documents. Then, with the close of fact discovery imminent, she claimed that she needed to cancel her deposition indefinitely because of injuries she claims she sustained from a swinging door (███████████████████████). Until Ms. Fanning filed her Opposition, she failed to substantiate any of these injuries—providing only ███████████████ and a ███████████████. And she failed to explain why, with reasonable accommodations or otherwise, she could not sit for a deposition by the close of fact discovery. Ms. Fanning's belated production of alleged proof of the claimed injuries—as part of her effort to fend off fees and even recover fees—represents the sort of sandbagging of opposing counsel and waste of judicial resources that should not be countenanced by this court. Ms. Fanning's pattern of delays left Smartmatic with no choice but to move to compel her deposition (and move to recover its fees).

Similarly, Ms. Fanning fails to demonstrate that she is entitled to a protective order. While the Opposition attaches ███████████████ *not made available to Smartmatic* prior to the August 29 deposition or the filing of the Motion to Compel, ████████ do not establish good

2

cause under Rule 26(c)(1) for entry of a protective order indefinitely postponing Ms. Fanning's deposition until "cleared by her doctor." The case Ms. Fanning cites in support of her protective order request involved an individual suffering from a potentially life-threatening brain disorder who was hospitalized in the intensive care unit. *See Dunford v. Rolly Marine Service Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005). Ms. Fanning's condition, however, ▮▮▮▮▮▮▮▮. Rather, reasonable accommodations can be fashioned to limit any potential discomfort in connection with the deposition. Indeed, "it is unusual for a court to prohibit a deposition entirely, and courts' reluctance to prevent depositions from taking place extends even to circumstances where deponents are in frail health." *See Pearson v. Univ. of Chicago*, No. 3:20-mc-00092, 2021 WL 194725, at *8 (D. Conn. Jan. 20, 2021).

Although Ms. Fanning claims to be willing to attend the deposition ▮▮▮▮▮,[1] that willingness will ultimately prove to be illusory in light of the pretrial scheduling order entered in the underlying case, *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098-WMW-JFD (D. Minn.) (the "Lindell Litigation"). At the time Ms. Fanning agreed to the original August 4 deposition, the cutoff for fact discovery was August 25, 2023. The scheduling order now provides that fact discovery shall be completed on or before October 20, 2023. Under the current Scheduling Order, ***Smartmatic needs to be prepared to file summary judgment papers by mid to late December (i.e., in approximately two months)***.

Finally, the Opposition's requests for sanctions and attorney fees are meritless. Attempts by a litigant to enforce a subpoena when there is no adequate excuse for non-compliance or a willingness to schedule the deposition within a definitive timeframe are reasonable, especially

---

[1] It is unclear from the Opposition whether Ms. Fanning's willingness to be deposed also remains conditioned upon receiving a note from Mr. Mohrman's doctor clearing him to attend the deposition, as originally requested in Ms. Fanning's Motion for Protective Order Regarding Non-Party Deposition Subpoena (ECF No. 1) ("Motion for Protective Order").

3

given circumstances present here. Since Ms. Fanning fails to (i) controvert Smartmatic's entitlement to an order compelling her deposition or (ii) establish that her refusal is justified or that she is entitled to a protective order, it is Smartmatic that is entitled to recover its attorney fees under Rule 37(a)(5). Moreover, Ms. Fanning is not entitled to sanctions because Smartmatic's decision to proceed with the deposition and then move to compel compliance was, and continues to be, completely reasonable under the circumstances. Specifically, the ███████████ and ████████████████ provided on August 25 (three days before the rescheduled deposition) did not justify her blanket refusal be deposed until she "sufficiently recovered from her injuries" at some indefinite time in the future. The ███████████ subsequently attached to the Opposition do not alter that conclusion and, in light of her steadfast refusal, the filing of the Motion to Compel was inevitable. As such, it is Ms. Fanning who should be subject to contempt sanctions under Rule 45(g).

As detailed in the Motion to Compel, Ms. Fanning's role as a primary source of the Defendants' disinformation campaign is a critical aspect of Smartmatic's lawsuit. Over two months have passed since the August 4, 2023 deposition date. After two cancellations at the eleventh hour, Smartmatic is simply not in a position to waste any more time.

## ARGUMENT

### I. Ms. Fanning Must Be Compelled to Appear for a Deposition

Under Federal Rule of Civil Procedure 30, a party may take the deposition of "any person," typically without leave of the court. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). To accomplish this, Rule 45 authorizes a subpoena to command a non-party to attend and testify. Fed. R. Civ. P. 45(a)(1)(A)(iii); *Teed v. JT Packard & Assocs., Inc.*, No. 10-MISC-23, 2010 WL 2925902, at *1 (E.D. Wis. July 20, 2010). If a non-party fails to respond to a subpoena,

a party seeking enforcement may bring a motion in "the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

A party may move for an order compelling discovery "[o]n notice to other parties and all affected persons." Fed. R. Civ. P. 37(a)(1). The court evaluates a motion to compel against the language of Rule 26, which provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Inland Diamond Prods. Co. v. Cherry Optical Inc.*, No. 20-C-352, 2022 WL 2128888, at *2 (E.D. Wis. June 14, 2022) (citing Fed. R. Civ. P. 26(b)(1)). "When a district court considers a motion to compel, it must evaluate factors such as timeliness, good cause, utility, and materiality." *CSC Holdings*, 309 F.3d at 993.

Ms. Fanning's Opposition never refutes that Smartmatic has satisfied all of these factors. Nor does Ms. Fanning seriously contend that she should not be deposed in the Lindell Litigation. Indeed, Ms. Fanning is one of the primary sources in the disinformation campaign against Smartmatic by one of the underlying defendants, Mike Lindell. But, because she cannot contest the relevance of Smartmatic's request, she is instead seeking to indefinitely postpone her deposition by filing a motion for protective order. Given the imminent close of fact discovery, the Court should not indulge Ms. Fanning's plea to delay any further. Instead, it should compel her to attend a deposition with reasonable accommodations ████████████████████.

## II. Ms. Fanning Fails to Demonstrate Good Cause Necessary for a Protective Order

A court may grant a motion for a protective order for "good cause" shown. Fed R. Civ. P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). The moving party bears the burden of showing "good cause." *Tusczkiewicz v. Allen Bradley Co., Inc.*, 170 F.R.D. 15, 16 (E.D. Wis. 1996). To satisfy the good cause showing, the moving party must make a "particular and specific demonstration of fact; conclusory statements are not sufficient." *Asyst*

*Techs., LLC v. Eagle Eyes Traffic Ind. Co.*, No. 11-C-00381, 2013 WL 160264, at *2 (E.D. Wis. Jan. 14, 2013) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

Courts virtually never preclude a party deposing a person with knowledge of relevant information to a litigation. *See Satter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("[P]rotective orders prohibiting depositions are rarely granted."); *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.")

As a result, a person seeking to preclude a deposition based on physical or other inability has the heightened burden of showing that the deposition will be dangerous to her health. "[A] party [is] seeking to bar an oral deposition based on health-related concerns . . . must mak[e] a *specific and documented factual showing* that the deposition would be dangerous to the deponent's health." *Stanek v. St. Charles Comm. Unit Sch. Dist. # 303*, No. 13 C 3106, 2020 WL 1304828, at *3 (N.D. Ill. March 19, 2020) (internal quotations omitted) (quoting *Richards v. Pac. Gas & Elec. Co.,* No. EDCV 17-471-DMG-KK, 2017 WL 10592150, at *2 (C.D. Cal. Oct. 27, 2017) (alteration in original); *see also Schorr v. Briarwood Estates Ltd. P'ship*, 178 F.R.D. 488, 491 (N.D. Ohio 1998) (same). "Conclusory or speculative statements about the harm that will be suffered—even if made by a treating physician—are insufficient to support entry of a protective order barring an oral deposition." *Stanek*, 2020 WL 1304828, at *3.

"If harm to a witness from a deposition is of potential concern, but does not rise to the level of a clearly defined and serious injury, courts can fashion accommodations to limit the potential harm to the deponent." *Qube Films Ltd. v. Padell*, No. 13-CV-8405, 2015 WL 109628, at *2

(S.D.N.Y. Jan. 5, 2015); *see also S.E.C. v. Children's Internet, Inc.*, No. C-06-6003, 2008 WL 346419, at *3 (N.D. Cal. Feb. 7, 2008) ("There is no doubt that [the witness] has a serious medical condition. However, the question for the Court is whether [the witness's] medical situation is so grave that he cannot participate in any kind of deposition, in particular, one in which special accommodations could be made.").

### A. Ms. Fanning Effectively Seeks to Escape Being Deposed Entirely

In light of the underlying case schedule, Ms. Fanning's request that she be deposed only after her doctor clears her is effectively a request for a protective order precluding her deposition. At all times, Ms. Fanning's counsel was aware of the deadlines in the Lindell Litigation and the need for her deposition to take place in a timely manner.

The parties began discussing deposition dates in June 2023, and settled on August 5 for Ms. Fanning's deposition. (ECF No. 4, Declaration of Julie M. Loftus ("Loftus Decl.") Ex. 10.) At the time, the fact discovery cutoff was August 25, 2023. Three days before August 5, Ms. Fanning's counsel sent an email stating "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." (Loftus Decl. Ex. 11.) Smartmatic wrote back stating it was sorry to hear about her injuries and noted the August 25 deadline for her to be deposed. (*Id.*) The parties continued to communicate about her deposition, and Smartmatic's counsel continued to diligently check in about when Ms. Fanning would be able to be deposed (and attempt to get it scheduled). (Loftus Decl. Exs. 12, 14–15.) After two weeks, and after the scheduling order in the Lindell Litigation was amended to move the fact discovery cutoff to October 20, 2023, the deposition was finally set for August 29—around a month after Ms. Fanning's accident.

7

Given the inability of Smartmatic to proceed with Ms. Fanning's deposition (along with other third-party sources for the disinformation campaign in the case that did not show up for their depositions), on September 27, 2023, Smartmatic moved for leave to take limited third-party discovery after the fact discovery deadline in the Lindell Litigation.[2] But even if this motion is granted, Smartmatic still requires Ms. Fanning's deposition at the earliest possible time for it to have any utility in Smartmatic's forthcoming motion for summary judgment.

Under the current scheduling order, Smartmatic needs to be prepared to file summary judgment papers by mid to late December (*i.e.*, in approximately two months).[3] To the extent Ms. Fanning can avoid being deposed before any applicable fact-discovery cutoff, the Defendants in the Lindell Litigation will undoubtedly seek to preclude her deposition entirely. To the extent she can avoid being deposed before Smartmatic must file summary judgment papers, Smartmatic will be irrefutably prejudiced in the context of its summary judgment motion.

**B.** **Ms. Fanning's ▬▬▬ Do Not Demonstrate a Condition Justifying the Requested Protective Order**

None of the ▬▬▬ attached to the Fanning Declaration[4] suggest that submitting to a deposition would ▬▬▬.[5] Instead, Dr. Nicolay's notes of her July 31

---

[2] ECF No. 205 in the Lindell Litigation; *see also* ECF No. 206 in the Lindell Litigation, Notice of Hearing on Motion for Leave to Complete Limited Third-Party Discovery After the Fact Discovery Deadline.

[3] The Lindell Litigation shall be ready for a jury trial on April 1, 2024. With respect to dispositive motions, the Scheduling Order provides that: (i) a moving party is to contact chambers by no later than December 1, 2023 to schedule a hearing, which requires at least two to three months advance notice to place on the calendar; and (ii) moving papers shall be filed forty-two days in advance of such hearing.

[4] "Fanning Declaration" or "Fanning Decl." shall mean the Declaration of Mary Fanning in Opposition to Plaintiff's Motion to Compel, for Attorney Fees, Sanctions and in Support of Mary Fanning's Motion for a Protective Order, Request for Attorney Fees and Sanctions (ECF No 14).

[5] Paragraph 38 of the Fanning Declaration asserts that ▬▬▬
▬▬▬ (Fanning Decl. ¶ 38.)
▬▬▬

8

appointment provide █████████████████████████████████████

(Fanning Decl. Ex. 1.) True, Dr. Nicolay's September 5 notes █████████████

████████████████████████████████████████ (Fanning Decl. Ex. 7.) ████████

██████████████████████████████████████████████ *And to be clear, these notes*

*by Dr. Nicolay, in particular* ███████████████████████, *were never provided to*

*Smartmatic at any time.*

The Opposition also asserts that courts prohibit witnesses from testifying ████

████████████████████████ *See* Opposition at 19. ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ Here, the ███████████ that Ms. Fanning submitted do not

state that ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

---

████████████████████████
         (*Id.*)
████████████████████████████████████████████████████████████.

Alternatively, Smartmatic suggests ███ to determine ███ ███ ███ ███

### C. Deposition Accommodations For Ms. Fanning's Condition

Further, Smartmatic is willing to provide reasonable accommodations ███ ███.[6] *First,* ███ ███ *Second,* ███ *Third,* ███ ███ Indeed, Smartmatic repeatedly accommodated her request to be deposed in Lake Geneva, Wisconsin, and incurred significant expense to reserve space (and cancel it for the August 5 deposition). Smartmatic could have insisted she be deposed at its counsel's offices in Chicago, Illinois, but did not. Ms. Fanning should be compelled to submit to a deposition, subject to such reasonable accommodations, within thirty days of entry of an order granting Smartmatic's Motion to Compel.

### III. The Court Should Sanction Ms. Fanning and Her Counsel, and Should Not Sanction Smartmatic and Its Counsel for Diligently Enforcing a Valid Subpoena

#### A. Ms. Fanning and Her Counsel Should Be Sanctioned

Contempt sanctions are appropriate when a deponent disobeys a duly served deposition subpoena. Fed. R. Civ. P. 45(g); *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010). To obtain sanctions, the moving party must demonstrate that the individual violated a specific and definite court order. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). A subpoena is "itself a

---

[6] ███

court order subject to contempt sanctions if disobeyed." *Hyatt*, 621 F.3d at 693. Ms. Fanning and her counsel should be subject to contempt sanctions because they repeatedly failed, without good cause, to comply with a subpoena.

*First*, Ms. Fanning twice cancelled a deposition at the last minute without providing any evidence to back up her claimed excuse. Smartmatic first asked for proof of Ms. Fanning's story on August 2, 2023, one day after Ms. Fanning cancelled her first deposition date. Fanning provided no proof. After three weeks and another cancellation, Ms. Fanning's counsel finally submitted ███████████████. ***So the record is clear, this is the only information provided to Smartmatic to support the assertions*** ████████████████████████████████ ████████████████████████████████. Not a single ███████ or ███████ was ever provided to Smartmatic's counsel. And why not? Smartmatic has no answer. At some point, Smartmatic had no choice but to conclude that its efforts to work in good faith with Ms. Fanning's counsel to schedule the deposition were turning out to be futile. Up until the days before the August 29 scheduled deposition, Ms. Fanning's counsel had provided ████████████████████████████████. ████████████████████████████████ Smartmatic was then even more suspicious when Ms. Fanning filed a motion for protective order the day before the deposition and attached zero exhibits or evidence.

*Second*, Ms. Fanning's newly submitted evidence ████████████████████. Although Ms. Fanning and her counsel have—finally—provided what seem to be ███████ ███████, there are still some unanswered questions about Ms. Fanning's story. One, Ms. Fanning ████████████████████████████████████████████████████████████████. (Opposition at 10.) This claim remains unsubstantiated. Two, Ms. Fanning's ███████

11

███████████████████████████████████████ (Opposition at 18–19.) ███████████████████████████████████████

███████████████████████ Three, Ms. Fanning, asserts that ███████████████████

███████████████████████████████████████

█████████████████ (Opposition at 7.) Ms. Fanning elaborates: ████████████

███████████████████████████████████████

████████████████████████ (Fanning Decl. ¶ 38.) Notably, Ms. Fanning does not provide any exhibit substantiating this claim. Regardless, as described above, if Ms. Fanning ████████

███████████████████████████████████████

████████████████████

Ms. Fanning and her counsel attempt to argue that Smartmatic did not satisfy the meet and confer requirement of Rule 37(a)(5) prior to filing the Motion. (Opposition at 21–22.) Not so. Smartmatic was in continuous contact with Ms. Fanning's counsel regarding her deposition from June 2023 through the filing of the Motion on September 5, 2023. (ECF No. 5, Smartmatic's Local Rule 37 Meet-And-Confer Certification.) A majority of those communications concerned Fanning's ██████████████████████████████████. When Ms. Fanning finally, on August 25, provided ███████████████████████████████████████ ██████████ (*See, e.g.* Declaration of William F. Mohrman ("Mohrman Decl.") Exs. 13–14.) Based on the insufficiency of Ms. Fanning's "evidence," Smartmatic lost any trust that Ms. Fanning and her counsel were acting in good faith. The next day (on August 26), Smartmatic sent a detailed letter identifying the implausibility of Ms. Fanning's claims. (Loftus Decl. Ex. 16.) Ms. Fanning claims that, at this point, Smartmatic "refused to meet and confer" with her counsel.

12

(Opposition at 21.) Not true. To be clear, Smartmatic responded—by email—to a missed phone call the day prior to Ms. Fanning's deposition. (*See* Mohrman Decl. Ex. 18.) Smartmatic declined to call her counsel because it did not credit Ms. Fanning's excuses, which Ms. Fanning had refused to substantiate, and because Smartmatic wanted to have a written record of Ms. Fanning's position. (*See id.*) It is impossible for Smartmatic to evaluate that a witness cannot be deposed—for some unknown time—without more. Regardless, by Ms. Fanning's counsel's own telling, ██████████ ██████████████████████ Based on the pattern of evasive conduct by Ms. Fanning and her counsel, Smartmatic was completely justified in having concerns about the course of conduct.

Smartmatic followed proper procedure in seeking Ms. Fanning's deposition testimony. Smartmatic validly subpoenaed Ms. Fanning, diligently rescheduled multiple cancelled depositions, and sought proof of delays as the fact discovery deadline in the Lindell Litigation drew near. Ms. Fanning and her counsel obstructed Smartmatic's efforts to depose her within court-ordered timelines and ████████████████████████████████████████. She failed to attend her deposition without good cause. The post-hoc evidence submitted with the Opposition does not cure the lack of adequate justification at the time Ms. Fanning failed to attend her deposition.

### B. Ms. Fanning and Her Counsel's Requests for Fees and Sanctions are Baseless

Ms. Fanning and her counsel concentrate the bulk of their legal arguments on various theories related to fees and sanctions. First, Ms. Fanning improperly argues that she should be awarded fees under Rule 37(a)(5)(A). Opposition at 21–22; *see* Fed. R. Civ. P. 37(a)(5)(A) (providing for fees ***if a motion is granted***). Second, Ms. Fanning argues she should be awarded monetary sanctions from Smartmatic and its counsel for "public claims [she] lied about her ████████████████ and alleged ████████████████ (Opposition at 22.) Third, Ms. Fanning's counsel claims he is owed monetary sanctions because

13

Smartmatic and its counsel "refused" to meet and confer with him and asserted they did not believe his excuses. These arguments are borderline frivolous for several reasons.

***First***, Ms. Fanning and her counsel argue that Smartmatic and its lawyers should be sanctioned for not believing them.[7] Ms. Fanning and her counsel take the time to list purported sanctionable statements. (Opposition at 22–23, 27). Most of these statements are descriptions or characterizations rather than assertions of fact, *e.g.*, "Fanning's injury was a 'preposterous claim'; "Fanning and her counsel should be subject to contempt sanctions because it is clear they actively avoided a subpoena through deceitful conduct." Other Smartmatic statements listed are simply factually accurate, *e.g.*, "Fanning's medical excuses are unsubstantiated" and "Fanning and her counsel escalated their misconduct by filing a motion for protective order that provides zero evidentiary support…" At bottom, Fanning and her counsel are resisting the characterization that their evidence was insufficient. ***At the time Smartmatic filed the Motion, it had received only*** ███████████, which were insufficient to substantiate █████████████████ ████████ (Mohrman Decl. Exs. 13–14.) Smartmatic stands by the characterizations in its Motion to Compel.

***Second***, Ms. Fanning and her counsel complain that Smartmatic did not attach as an exhibit the August 26, 2023 letter to Ms. Fanning's counsel. (Opposition at 23.) That is incorrect. The August 26 letter was attached to the Loftus Declaration as Exhibit 16. (Loftus Decl. Ex. 16.) What Smartmatic did not do—and has never done—was disregard or publicly disclose any ████ ████████████ of Ms. Fanning, or any █████████████████

---

[7] Smartmatic notes that, by its own terms, Rule 11 does not apply to discovery disputes and motion practice. *See* Fed. R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."); *Dreyer v. GACS Inc.*, 204 F.R.D. 120, 123 (N.D. Ind. 2001). Regardless, the record reflects that Smartmatic has acted reasonably and diligently, in accordance with Rule 11(b), in presenting the Motion to Compel.

14

This is a red herring. Smartmatic's counsel provided a copy of the protective order in the Lindell Litigation for Ms. Fanning to use, as appropriate, in connection with asking for proof of Ms. Fanning's medical condition. Smartmatic does not object to designating or keeping her ▮▮▮▮ ▮▮▮▮ confidential—but Smartmatic's counsel never told her counsel that anything he wants could be marked as Attorneys' Eyes Only ("AEO"). To start, as a matter of good practice, Smartmatic is not telling any third parties in the Lindell Litigation that they can just mark anything they want as "AEO" under the protective order. But the real point of contention is that Smartmatic's counsel is entitled to correct statements made by Ms. Fanning's counsel as to what was said during phone calls by Smartmatic counsel, and in this instance, a junior attorney. It is not appropriate for Mr. Mohrman to take advantage of the inexperience of a junior attorney.

***Finally***, Ms. Fanning and counsel complain that Smartmatic explained Ms. Fanning's relevance to the Lindell Litigation in its Motion, deeming the discussion of Fanning's involvement in Lindell's defamation as an "irrelevant issue." (Opposition at 24; *see also* Opposition at 20 ("they use these pages to express their animus to Ms. Fanning and claim she is a conspiracy theorist.")) Needless to say, Smartmatic was required to establish the relevance of Ms. Fanning's deposition testimony in bringing its motion to compel. *See CSC Holdings*, 309 F.3d at 993 (requiring moving party to demonstrate good cause). Fanning's involvement in the underlying litigation is squarely relevant to the discussion of a motion to compel her testimony. To suggest a discussion of relevance is sanctionable strains credulity.

Ms. Fanning and counsel are attempting to deflect Smartmatic's valid concerns about their evasive conduct around Smartmatic's subpoena. Smartmatic's counsel would not be serving its client if they accepted Ms. Fanning's ▮▮▮▮▮▮▮▮▮▮▮▮▮ at face value and did not pursue her deposition within the schedule. Smartmatic timely communicated its concerns about

15

Ms. Fanning's evidence to her counsel and enforced its subpoena. Smartmatic and its counsel should not be sanctioned for doing their job.

## CONCLUSION

For the reasons set forth above and in Smartmatic's Motion to Compel, Smartmatic respectfully requests that the Court enter an order: (1) compelling Ms. Fanning to appear for a deposition, subject to reasonable accommodations along the lines discussed herein within thirty days of entry of such order, or in the alternative ███████████████████████████████████ ███████████████████████████████; (2) sanctioning Ms. Fanning and her counsel and ordering them to pay Smartmatic's reasonable attorneys' fees and costs in pursuing her deposition; (3) denying Ms. Fanning's motion for a protective order; and (4) denying requests for fees and sanctions from Ms. Fanning and her counsel.

Dated: October 10, 2023

Respectfully submitted,

/s/ *Nicole E. Wrigley*

Patrick Nolan
   Patrick.Nolan@quarles.com
**QUARLES & BRADY LLP**
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
Telephone: (414) 277-5465

Nicole E. Wrigley
   NWrigley@beneschlaw.com
Julie M. Loftus
   JLoftus@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949

*Attorneys for Smartmatic USA Corp., Smartmatic B.V. Holdings, and SGO Corp. Ltd.*